In the Matter of GREEN TIE REALTY CORPORATION, Debtor.

Bankruptcy No. B–80–00527(B).
Adv. No. 81–6144.

United States Bankruptcy Court,
S. D. New York.

Oct. 30, 1981.

924

Louis P. Rosenberg, Brooklyn, N. Y., for plaintiff-landlord.

Kronish, Lieb, Shainswit, Weiner & Hellman by Richard Lieb, New York City, for defendant.

## DECISION ON DEBTOR'S MOTION TO DISMISS COMPLAINT FOR RELIEF FROM AUTOMATIC STAY.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Having commenced a Chapter 11 case under the Bankruptcy Code in the Bankruptcy Court in Puerto Rico, this debtor now contends that court has exclusive jurisdiction of the debtor's property, pursuant to 28 U.S.C. § 1471(e) and that the landlord of its leased property in New York may not request relief in this court from the automatic stay for eviction purposes, notwithstanding that the Bankruptcy Court in Puerto Rico granted the landlord's motion for a change of venue to New York with respect to the debtor's adversary proceeding for damages against the landlord "resulting from an eviction case filed in New York against . . . debtor by the . . . landlord . . .". This dispute is another in the series of cases adumbrating the contours of the expanded jurisdiction of the bankruptcy court under the new Code. However, the additional twist in this case arises out of the fact that the "home court" where the bankruptcy case was commenced did transfer to this outpost court the venue of an adversary proceeding between the debtor and its landlord. The debtor maintains that such transfer does not confer jurisdiction upon this court to hear and determine the landlord's post-transfer request for relief from the stay for the purpose of continuing the New York eviction action for the reasons that this court allegedly does not have original jurisdiction of that action under 28 U.S.C. § 1471(c) and because the Bankruptcy Court in Puerto Rico has exclusive jurisdiction of the debtor's property, wherever located, in accordance with 28 U.S.C. § 1471(e).

## FACTS

On September 23, 1980, the debtor, Green Tie Realty Corp., filed a petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Puerto Rico. At that time the debtor was a tenant under a prepetition lease entered into with Cornell Associates, Inc. (the landlord) pursuant to which the debtor leased two properties, one in Valley Stream, Nassau County, New York, and the other in Yonkers, Westchester County, New York. For various reasons, including vandalism, the debtor has no need for the Yonkers property. The debtor desires to remain in possession of the Valley Stream property which "is the site of its only business (operating a private school)." (P. 14 Motion for Stay Pending Appeal).

When the debtor filed its petition for relief in the Bankruptcy Court of Puerto Rico on September 23, 1980, there was then pending a state court action in the County of Nassau, New York, commenced by the landlord on August 21, 1980, for the recovery of possession of the property in Valley Stream, which was the site of the debtor's only business. Pursuant to Code § 362(a), the filing of the debtor's petition for relief under Chapter 11 of the Bankruptcy Code automatically stayed the continuation of the landlord's state court action.

By a complaint dated February 4, 1981, the debtor initiated an adversary proceed-

ing against the landlord in the Bankruptcy Court in Puerto Rico. The debtor's complaint requested the following relief:

"1. Order defendant to properly deliver the premises and refrain from violating the lease agreement by taking the necessary measusres (sic), at their expenses, to correct the problem and make the premises fit for use and properly deliver the premises.

2. Declare that the lease agreement between the parties is not in default in (sic) the part of plaintiff by reason of nonpayment of rent since the same was caused by the prior violation in the part of defendant.

3. Determine that the proper rent payable for the premises now in used (sic) that is the Valley Stream property, is $2,000.00 a month and credit all amounts paid in excess of said amount to future rent.

4. Award plaintiff compensation for damages as related in the complaint.

5. Excuse plaintiff from the payment of any rent whatsoever until the amount paid herein has been exhausted at the rate of $2000. a month.

6. Order whatever remedy is just under the facts and circumstances that may be shown in this action."

The landlord asserted as an affirmative defense in its answer to the debtor's adversary proceeding in the Bankruptcy Court in Puerto Rico a request that the action be transferred to a Bankruptcy Court in New York, which was worded as follows:

"1. That there is pending between the same parties another action in the District Court of the County of Nassau entitled Cornell Associates, Inc. vs. Green Tie Realty Corporation SP–719/80 as to which the same allegations are being alleged and which was filed prior to the filing of this case.

2. That this action should be transferred to the Bankruptcy (sic) for the United States District of New York under the provisions of Section 1475 of the Bankruptcy Act." (sic).

Pursuant to an order dated May 8, 1981, Judge Beckerleg in the United States Bankruptcy Court for the District of Puerto Rico, granted the landlord's motion for change of venue for the debtor's adversary proceeding to the United States Bankruptcy Court for the Southern District of New York and included in footnote # 1 an unanswerable question as to why the debtor even chose the Bankruptcy Court in Puerto Rico as the place for filing its Chapter 11 petition. The pertinent part of the order for change of venue reads as follows:

"It appears that all of debtor's creditors reside in New York. Plaintiff's business is in New York as is the real property leased by plaintiff from defendant around which this controversy revolves. It also appears that the parties themselves have heretofore had resort and access to New York courts with no greater problem than that caused by any litigation, and that the only substantial reasons for the present adversary proceedings being filed in this jurisdiction is that this is the site of the plaintiff's Chapter 11 proceeding[1] and allegedly the residence of the plaintiff's principal witness.

[1] *Why, we know not.*" [Emphasis added]

It appears to us that what is involved in these proceedings must of necessity, require the application of New York law, as to which we are no expert; while that alone would not support a change of venue, the other factors here involved require us to grant the motion for a change of venue.

.      .      .      .      .

The motion of change of venue is granted, the Clerk of this Court is instructed to transfer these adversary proceedings pursuant to 28 U.S.C. 1475 to the United States Bankruptcy Court for the Southern District of New York.

After the entry of the order in the Bankruptcy Court in Puerto Rico changing the venue of the debtor's adversary proceeding with respect to the lease for the property in New York to this court, the landlord filed a

"Motion Submitting Proposed Form of Judgment" in the Bankruptcy Court in Puerto Rico, dated June 21, 1981, which purportedly reflected an alleged stipulation entered into on the record in the Bankruptcy Court in Puerto Rico concerning the debtor's obligation for use and occupancy of the one parcel of property in New York which the debtor desires to continue renting, namely, the Valley Stream property which was the site of its only business enterprise. Pursuant to a handwritten memorandum endorsement dated June 26, 1981, Judge Beckerleg declared:

"Refer to Bankruptcy Court for S.D. of N.Y."

Thereafter, the debtor submitted the following documents to the Bankruptcy Court in Puerto Rico:

1. Motion in Opposition to form of judgment proposed by Cornell Associates Inc., filed June 30, 1981.

2. Motion for Reconsideration, filed on July 8, 1981.

3. Motion submitting Modified Form of Judgment, filed on July 8, 1981.

The debtor's Motion in Opposition, listed in number 1 above was marked with a handwritten memorandum endorsement, dated July 8, 1981 in which Judge Beckerleg directed as follows:

"As case has been transferred to New York, the Clerk is instructed to send this motion there."

The Motion for Reconsideration and the Motion Submitting Modified Form of Judgment, listed respectively in numbers 2 and 3 above, were sent together with the Motion in Opposition under cover of a letter dated July 20, 1981, received by this court on July 27, 1981 and signed by the Deputy Clerk of the court in Puerto Rico, which stated that these documents were transferred to this court "as per instructions of Honorable W. H. Beckerleg."

Having received the order from the Bankruptcy Court in Puerto Rico, dated May 8, 1981, for a change of venue of the debtor's adversary proceeding relating to the leased property in New York, together with the memorandum endorsements dated June 26, 1981 and July 8, 1981 with respect to the debtor's obligations under the lease for its occupancy of the Valley Stream property, this court then set the matters down for a hearing on September 3, 1981. This was the date that the parties finally agreed was mutually acceptable. At the hearing on September 3, 1981, the debtor requested that a date for trial, at a considerable time in the future, be fixed so as to afford ample time for the debtor to conduct discovery and make pre-trial motions in the adversary proceeding. The debtor indicated to this court that the proceeding would entail substantial factual and legal controversy over the lease and a related purchase option covering both the Valley Stream and the Yonkers properties. The debtor asserted that an important aspect of the dispute between the parties is that after they entered into the lease and option transaction included in the lease, the Yonkers property suffered major damage, allegedly rendering it unusable by the debtor. However, the lease provided for a single dollar amount as rent for both the Valley Stream and Yonkers properties. Similarly, the purchase option in the lease provided for but a single dollar amount as the option price for the purchase of both properties.

The landlord objected to a delay for discovery and pretrial motions and noted that the lease called for a monthly payment of rent in the sum of $8350 for both properties and that the last rent payment of $8350 the landlord received from the debtor was more than a year ago, on July 1, 1980. (Trans. 9/3/81, p. 67). Apparently the parties had previously attempted to effect a stipulation in the Bankruptcy Court in Puerto Rico whereby the debtor would pay $2500 per month after July, 1981 for use of the Valley Stream property. The landlord argued that this stipulation never took effect because it also required the debtor to pay accrued real estate taxes for which it was liable under the lease. In any event, the parties did not agree as to what the stipulation was and the Bankruptcy Judge in Puerto Rico refused to sign any order purporting to reflect such a stipulation, referring the matter to this court instead.

At the hearing on September 3, 1981, this court agreed to allow the debtor time for discovery and adjourned the trial of the debtor's adversary proceeding to November 4, 1981, on condition that the debtor pay the rent called for in the lease under which the debtor bottomed its rights in the adversary proceeding which it commenced. The court referred to the $8350 called for under the lease and stated:

"If the debtor wishes to maintain the property and assert that this lease is in full force and effect, and he has the rights under the lease, that is the amount that he is to pay as rent." (Trans. 9/3/81, p. 84)

By order dated September 14, 1981, this court directed the debtor to pay to the landlord $8350 on September 13, 1981, another $8350 on October 1, 1981 and a further $8350 on November 1, 1981, that day being three days before the November 4, 1981 trial scheduled by this court.

On September 16, 1981, the debtor filed with this court a motion for stay of the order dated September 14, 1981, pending appeal. One of the points urged by the debtor for appeal is:

"[T]he matter of the amount to be paid by the debtor for use and occupancy for the Valley Stream property during the pendency of its reorganization case was not a matter transferred to this Court by the Bankruptcy Court in Puerto Rico. What was transferred to this Court was an adversary proceeding. Even though this adversary proceeding concerns a lease of real property, the law does not condone the injection into (sic) an issue over the length of a continuance of the question of the amount of 'rent' to be paid as a condition to the Debtor's obtaining a continuance." (Motion for Stay, pp. 6, 7)

The debtor fails to mention Judge Beckerleg's memorandum endorsements on the "Proposed" and "Opposed" Forms of Judgment, submitted respectively by the landlord and debtor, referring these documents to this court. These papers concern a proposed stipulation of debtor's obligation for use and occupancy of the Valley Stream Property. Moreover, the debtor's Modified Form of Judgment and Motion for Reconsideration, concerning the same stipulation, were forwarded along with debtor's Motion in Opposition to Form of Judgment under cover of the July 20, 1981 letter received by this court on July 27, 1981 (discussed in this opinion supra) from the court in Puerto Rico, stating that the documents were sent here "as per instructions of Honorable W. H. Beckerleg." Therefore, it is factually incorrect for the debtor to suggest that "the matter of the amount to be paid by the debtor for use and occupancy for the Valley Stream property during the pendency of its reorganization case was not a matter transferred to this court ...." (Motion for Stay, pp. 6, 7).

In any event, at the hearing on September 17, 1981 with respect to the debtor's motion for a stay pending appeal, this court ruled as follows:

"I will not stay the order because there is a stay with regard to any action that the creditors may take, and that stay is under 362.... There can be no action and no harm to the debtor if the $8350 is not paid because nothing can be done, and you may go up on appeal with regard to that order.

The other aspects of the case will have to wait for a later determination. So, we have a November 4th trial date, and whether or not that amount is paid, the debtor will not be ousted from possession by virtue of non-payment per se because no eviction proceeding can be commenced unless and until a 362 determination is made. Submit order." (Trans. 9/17/81 pp. 61, 62)

Needless to say, on September 22, 1981, the landlord filed in this court a complaint seeking relief from the automatic stay under Code § 362, alleging in pertinent part as follows:

"2. That prior thereto a lease was entered into with the Debtor covering the permises (sic) 500 Central Avenue, Valley Stream, New York at a monthly rental of $8350.00.

3. That the Debtor has defaulted in the payment of the rents and pursuant to Order of this Court dated September 14, 1981 the Debtor was directed to pay to Plaintiff the sum of $8,350.00 no later than September 15, 1981 but payment was not made.

4. That Defendant is hopelessly insolvent and is unable to make payments as required by the Order of this Court and the Bankruptcy Code and the financial situation of Defendant does not afford adequate protection for the interests of the Plaintiff and will suffer irreparable damages (sic) by permitting the Defendant to continue to occupy the premises unless the automatic stay of bankruptcy be terminated, annulled, or modified so that the plaintiff-landlord may repossess the premises owned by it and no (sic) occupied by the Defendant.

WHEREFORE, the plaintiff prays for an Order pursuant to Title 11, U.S.C. Section 362, for relief from the automatic stay so as to permit eviction of the Defendant from the premises which it occupies."

The debtor then countered with a motion dated October 20, 1981 for an order dismissing the landlord's adversary proceeding for relief under Code § 362 on the ground, among others, that:

"[T]his Court lacks jurisdiction over the subject matter of such adversary proceeding by reason of the pendency of such Chapter 11 case of the Debtor in the Bankruptcy Court in Puerto Rico, or alternatively, pursuant to Chapter 90 of Title 28 of the United States Code changing the venue of, and transferring the above-mentioned adversary proceeding from this Court to the Bankruptcy Court in Puerto Rico in the interest of justice and for the convenience of the parties, and further because proper administration of this debtor estate cannot be effected unless matters concerning the Debtor's possession are under the direct supervision and control of the Bankruptcy Court in Puerto Rico, whose authorization for the above adversary proceeding has not been obtained by the plaintiff nor sought by plaintiff.

WHEREFORE, the Debtor-defendant prays that the above-mentioned adversary proceeding be dismissed or, alternatively, transferred to the Bankruptcy Court in Puerto Rico."

Accordingly, the question for determination is whether or not this court has jurisdiction over the subject matter of the landlord's post-transfer request for relief from the automatic stay under Code § 362.

## DISCUSSION

The bankruptcy courts' subject matter jurisdictional authority over bankruptcy matters was compromised under the Bankruptcy Reform Act of 1978 because of last minute congressional maneuvering. Section 151(a) of amended Title 28 U.S.C. will convey adjunct status on the bankruptcy courts as of April 1, 1984; adjunct to the district court for the district in which each bankruptcy court is located. The conceptual purpose for the creation of this statutory conduit for transmittal of the necessary expanded jurisdiction to the bankruptcy courts, as non-Article III courts is explained in 1 *Norton Bankruptcy Law & Practice* § 4.18 (Part 4—page 48) as follows:

"It seems reasonable to speculate that, in the spirit of compromise, the term 'adjunct' was viewed historically as providing a salve for the constitutional concerns for the grant of this pervasive jurisdiction to a non-Article III court and judge. After more reflection, such a view has doubtful constitutional relevance. Sections 151(a) and 1471 comprise the total pseudo structural, functional, and jurisdictional connection of these two different, separate independent trial courts. Such statutory pretense to provide a buffer or mantle of Article III insulation to the Bankruptcy Court for the exercise of such jurisdiction and judicial powers is an unsatisfactory solution to Congressional concerns as to the constitutional validity of the United States Bankruptcy Court."

Indeed, even the expanded jurisdictional pass-through via the district courts has

been held by one district court to be an unconstitutional delegation of authority to bankruptcy judges to try cases relegated under the Constitution to Article III judges. *Marathon Pipeline Co. v. Northern Pipeline Construction Co.*, 12 B.R. 946 (D.C.Minn. 1981). This case is currently on direct appeal to the United States Supreme Court.

Originally it was contemplated that the expanded jurisdictional authority exercisable by the bankruptcy courts should be derived through the United States Court of Appeals and automatically passed through to the new non-Article III United States Bankruptcy Judges. See 1 *Norton Bankruptcy Law & Practice* § 4.18 (Part 4–page 47). In the negotiations that immediately preceded the enactment of the Bankruptcy Reform Act in early October, 1978, the District Court was substituted for the Court of Appeals in 28 U.S.C. 151(a) and in 28 U.S.C. § 1471. Thus, 28 U.S.C. § 1471(a) and (b) prescribe an expanded grant of original jurisdiction to the district courts of cases under title 11 and civil proceedings arising under title 11 or arising in or related to cases under title 11.

Original jurisdiction is vested in the bankruptcy court under 28 U.S.C. § 1471(c) which declares:

"(c) the bankruptcy court *for the district in which a case under title 11 is commenced* shall exercise all of the jurisdiction conferred by this section on the district courts." (Emphasis added).

The language in subsection (c) does not empower a bankruptcy court in which a title 11 case has *not* been commenced, i. e., the outpost court in this case, to entertain original subject matter jurisdiction of a civil proceeding such as an adversary proceeding to lift the automatic stay resulting from the filing of a title 11 case in a different bankruptcy court.

Those courts which have sustained the jurisdictional authority of the bankruptcy court where a title 11 case had *not* been commenced, i. e., the outpost courts, have done so on the theory that subsections (a), (b) and (c) in 28 U.S.C. § 1471 combine to grant original subject matter jurisdiction of

cases and civil proceedings to the bankruptcy courts as part of a court system. Thus, it is reasoned that these subsections do not limit jurisdiction to a single bankruptcy court, namely, the bankruptcy court where a title 11 case is commenced. *In re Coleman American Companies, Inc.*, 6 B.R. 251 (Bkrtcy., Col.1980) ("Coleman I"); *In re Burley*, 11 B.R. 369 (Bkrtcy., C.D.Cal.1981). This position finds support in 1 *Collier on Bankruptcy* ¶ 3.01 page 3–45, where it is stated:

"Nevertheless, it is quite clear that the literal reading is not the intended meaning. The progenitor of section 1471(c) was found in 28 U.S.C. § 1334(d)(1), which section 216 of S.2266 proposed to add. That proposed section would have provided:

'. . . [A] bankruptcy judge may exercise all powers and jurisdiction conferred on the district court in cases under title 11 and in civil proceedings under title 11 or arising under or related to cases under title 11.'

It was the intent of this subsection

'that the bankruptcy court will receive and the bankruptcy judge will handle cases and proceedings under title 11 . . .'

This is the spirit in which section 1471(c) should be interpreted."

This interpretation of an inferential endowment of original jurisdiction over civil proceedings to all of the bankruptcy courts as a system was compelled by the apparent facial inconsistency under the Bankruptcy Reform Act of 1978 in granting original jurisdiction only to the bankruptcy court where the title 11 case was commenced and, nevertheless, permitting transfer of venue and retention of cases under 28 U.S.C. Sections 1473, 1475, 1477 and 1478 to bankruptcy courts other than where the title 11 case was commenced. This point was succinctly noted by Judge Ordin in *In re Burley*, supra at page 368:

"The provisions in § 1475 and § 1477(a) for transfer of venue, and retention of the case in a court of improper venue, are incomprehensible if the bankruptcy court 'for the district in which a case under

title 11 is commenced' is the only bankruptcy court with the jurisdiction derived from § 1471(a) and (b). A court must have jurisdiction or it cannot entertain a case or proceeding at all; a court which can entertain a case or proceeding must, by definition, be a court with jurisdiction."

Although Judge Clark, as the outpost court in *Coleman I*, in Colorado, did not follow the literal language in 28 U.S.C. § 1471(c), Judge Pusateri, as the home court in *Coleman II*, in Kansas, did read this subsection literally and refused to accept the concept that his court must share original jurisdiction with other bankruptcy courts over civil proceedings relating to a bankruptcy case commenced in the District of Kansas. *In re Coleman American Companies, Inc.*, 8 B.R. 384 (Bkrtcy., Kan.1981) ("Coleman II"). However, *Coleman II* was based upon the exclusive jurisdictional grant over the debtor's property conveyed under subsection (e) of 28 U.S.C. § 1471 to the bankruptcy court where the title 11 case was commenced, as distinguished from nonexclusive jurisdiction over civil proceedings conveyed under subsections (b) and (c) of 28 U.S.C. § 1471.

Assuming that there existed a congressional intention not to limit original jurisdiction over civil proceedings to a single bankruptcy court where a title 11 case is commenced, but to grant original but not exclusive jurisdiction to any bankruptcy court in which venue is appropriate, Congress in its hasty treatment failed to express this intention in subsection (c) of 28 U.S.C. § 1471. Nonexclusive original jurisdiction, which was given to all of the district courts as a court system under subsection (b) of 28 U.S.C. § 1471, was simply *not* coextensively passed through to all of the bankruptcy courts.

Hence, if the bankruptcy courts do not obtain nonexclusive original jurisdiction under subsection (c) of 28 U.S.C. § 1471 for civil proceedings arising under title 11 or arising in or related to cases under title 11, if such cases are not commenced in those courts, how then may the bankruptcy courts

entertain venue for such civil proceedings if they are without nonexclusive original jurisdiction? The answer is not to be found under subsection (c) of 28 U.S.C. § 1471 as an unexpressed congressional intention.

Reference must be had to sections 1473, 1475, 1477 and 1478 of 28 U.S.C., which are captioned as venue provisions. All of these provisions specifically refer to a bankruptcy court for the district either where the defendant resides, § 1473(b); where the State or Federal Court sits, § 1473(c), (d) and (e); or for another district, in the interests of justice and for the convenience of the parties, § 1475; or of a district in which is filed a case or proceeding laying venue in the wrong division or district, § 1477; or for the district where such civil action is pending, § 1478. Thus, the *district* is referred to in these sections as the controlling factor in determining the venue for the civil proceeding. Jurisdiction is therefore not based on the original jurisdictional authority of the bankruptcy courts in those districts. The jurisdictional predicate is derived from subsections (a) and (b) of 28 U.S.C. § 1471 which is conferred upon the district courts.

If the so-called "adjunct" status that the bankruptcy courts will have after April 1, 1984, as described in section 151(a) of amended title 28 U.S.C., is to serve any structural, functional or operational purpose, it must be as a nexus between the bankruptcy courts and the jurisdictionally empowered district courts which serve as a conduit for the passage through of the expanded original jurisdiction. Therefore, any bankruptcy court in which venue is appropriate may entertain civil proceedings arising in or related to cases under title 11 because the *district court* possesses such original jurisdiction under subsections (a) and (b) of 28 U.S.C. § 1471. This expanded jurisdiction is passed through to the bankruptcy court of suitable venue. However, the "adjunct" status does not come into effect until April 1, 1984, when the new bankruptcy courts contemplated under the Bankruptcy Reform Act of 1984 are in place. During the transition period through March 31, 1984, each of the courts

of bankruptcy are continued, and as "so continued shall constitute a *separate department of the district court,* that is such court of bankruptcy under the Bankruptcy Act" (Emphasis added) § 404(a), Title IV of the Bankruptcy Reform Act of 1978. As separate departments of the district courts during the transition period, the bankruptcy courts certainly possess at least as much passed through jurisdiction as they would have after April 1, 1984 in their "adjunct" status. Therefore the nonexclusive original jurisdiction granted under subsection (b) to the district courts over civil proceedings relative to title 11 cases is sufficient authority to sustain a transfer of a proceeding to a bankruptcy court of proper venue under 28 U.S.C. § 1475, or the retention of the proceeding in a bankruptcy court of improper venue under 28 U.S.C. § 1477(a), or the removal of a pending civil case to the bankruptcy court for the district where such civil action is pending, § 1478(a).

### JURISDICTION OVER PROPERTY

The debtor in this case observes that the landlord's adversary proceeding for relief under Code § 362 concerns property of the debtor, i. e., its leasehold interest. Therefore even if bankruptcy courts where title 11 cases have *not* been commenced may entertain civil proceedings related to bankruptcy cases commenced in other bankruptcy courts, there is, nevertheless, a prohibition against entertaining jurisdiction as to the property of a debtor whose title 11 case was commenced in another bankruptcy court. The debtor correctly points to 28 U.S.C. § 1471(e) which vests exclusive jurisdiction of all of the debtor's property, wherever located, in the bankruptcy court where the case is commenced, and reads as follows:

"(e) The bankruptcy court in which a case under title 11 is commenced shall have exclusive jurisdiction of all of the property, wherever located, of the debtor, as of the commencement of such case."

Subsection (e) differs from subsections (a), (b) and (c) in 28 U.S.C. § 1471 in that jurisdiction is vested directly in the bankruptcy court in which a case under title 11 is commenced, and not vicariously through the district courts. Furthermore, the jurisdiction is described as "exclusive." This point was noted in *Coleman II,* when the court stated as follows:

"In this instance, factor (a), the lack of subject matter jurisdiction, is clearly present. Section 1471 is quite clear, it unmistakably grants the court wherein a Chapter 11 petition is filed, among other things, exclusive jurisdiction of the debtors' property. Exclusive jurisdiction means exclusive jurisdiction. *Fritz v. U. S.,* 535 F.2d 1192 (9th Cir. 1976). Though the Colorado court in its decision reported as *In re Coleman American Companies,* Bkrtcy., 6 B.R. 251 (Bkrtcy., 1980) determined as a matter of statutory construction that § 1471(e) does not mean what is clearly stated therein, the rules of statutory construction support the proposition that the place to begin statutory construction is the statute itself, if the statute is clear, one need go no further to discover its meaning. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); *Aaron v. SEC,* 446 U.S. 680, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980); *Diamond v. Chakrabarty,* 447 U.S. 303, 100 S.Ct. 2204, 65 L.Ed.2d 114 (1980)."

*In re Coleman American Companies, Inc.,* 8 B.R. 384 at page 389 (B.C.Kan.1981).

The logic behind this provision is to make certain that all property of the debtor is in the exclusive custody of the bankruptcy court where the case is commenced. A bankruptcy case could become frustratingly fragmented and out of control if the debtor's property could be nibbled at in every district where it owned property while it attempted to effect a liquidation or rehabilitation under the aegis of the home court where the case was commenced. Subsection (e) does more than "simply [make] clear that the bankruptcy court has jurisdiction over all of the property of the debtor and emphasizes the end of distinctions between summary and plenary jurisdiction," as stated by the *Coleman I* court in *In re*

*Coleman American Companies, Inc.*, 6 B.R. 251 at page 254. Subsection (e) conveys exclusive jurisdiction to the home court and denies the commencement of actions in bankruptcy courts other than the home court without the consent or referral by the home court.

*In re Dew Mortgage Company Inc.*, 10 B.R. 242 (D.C.M.D.Fla.1981) is illustrative of how fragmentation of a bankruptcy case may occur if a bankruptcy court in a district in which the debtor's property is located, but where the bankruptcy case had not been commenced, assumes jurisdiction over the debtor's property. The bankruptcy case was commenced in Illinois, whereas relief from the automatic stay in order to foreclose on property in Florida was sought in the Bankruptcy Court in Florida. Without referring to or discussing 28 U.S.C. § 1471(e), the court assumed jurisdiction, stating at page 244:

"Matters concerning real property have always been of local concern and traditionally are decided at the situs of the property. Were the stay to be lifted so that the foreclosure could continue, that foreclosure could only proceed in the local courts. An additional equitable consideration is that the plaintiff never did business with the defendants. The plaintiff did not lend the defendants money, with the implicit risk that a distant Chapter 11 might ensue. On the contrary, defendant accepted a junior mortgage in a distant state, a business practice which may now entail some costly consequences."

Manifestly, subsection (e) of 28 U.S.C. § 1471 was adopted in order to conform to the purpose of underlying sections 111, 311, 411 and 611 of the former Bankruptcy Act, which also defined the court's exclusive jurisdictional reach for rehabilitation purposes to include all property of the debtor, wherever located. See, *Kennedy, The Bankruptcy Court Under the New Bankruptcy Law: Its Structure and Jurisdiction*, 55 American Bankr. L.J. at page 87 (Winter 1981). Accordingly, this court agrees with the debtor's position that section 1471(e)'s purpose "was to centralize all controversies affect-

ing the debtor's property in the title 11 court that is granted 'exclusive jurisdiction', so that, *at least in the first instance*, that court can decide whether to exercise jurisdiction or to abstain or defer to some other court or to transfer under the venue provisions." (Emphasis added) (Debtor's Brief, p. 12).

In this case the home court in Puerto Rico already expressed its discretion in the first instance, as reflected by the transfer of venue order dated May 8, 1981, and in the second and third instances, after the transfer of venue order, by memorandum endorsements dated June 6, 1981 and June 26, 1981. These post-transfer memorandum endorsements referred to this court the parties' motions addressed to the debtor's obligation for occupation of the property in Valley Stream, New York, which is the subject of the landlord's state court eviction action as well as the landlord's instant request for relief from the automatic stay. Thus, Judge Beckerleg decided that matters pertaining to the debtor's property in New York, which was originally under the exclusive jurisdiction of the Bankruptcy Court in Puerto Rico pursuant to 28 U.S.C. § 1471(e), should be heard by the Bankruptcy Court in New York. Judge Beckerleg could not have been more explicit in expressing his intention to have all disputes pertaining to the debtor's New York property relinquished from the aegis of the Bankruptcy Court in Puerto Rico and determined by this Court. Having accepted the transfer of venue of the dispute between the parties with respect to the debtor's New York property interests from the Bankruptcy Court in Puerto Rico, pursuant to 28 U.S.C. § 1475, this court has appropriate jurisdiction, as a separate department of the district court in New York, to entertain the landlord's request for relief from the automatic stay in so far as it enjoins the continuation of the state court eviction action.

## SUFFICIENCY OF THE CODE § 362(d) REQUEST

The debtor also contends that the landlord's complaint for relief from the automatic stay is inadequate because it contains

no allegations as to the debtor's lack of equity and that the property is not necessary to an effective reorganization, as expressed in Code § 362(d)(2). In sum, the debtor reasons that the complaint is a fatally defective conclusory pleading because it does not appear from the complaint that the value of the property is going down nor is there any allegation in the complaint that the debt exceeds the value of the property.

The debtor's position elides the fact that the landlord is not a secured creditor and the debtor, as lessee, possesses no legal interest or equity in the fee estate. The value of the property is of no concern to this tenant; it is the debtor's leasehold interest that is at stake. If the debtor wishes to preserve its leasehold interest it should direct its attention to proceeding under Code § 365 to assume the unexpired lease by curing the rent defaults, which are now substantial, and providing adequate assurance of future performance under the lease, as mandated under Code § 365(b).

The debtor's complaint is structured in response to Code § 362(d) which provides that relief from the stay is obtainable by a party in interest upon "request" made. The "request" must be in the form of a complaint initiating an adversary proceeding because Bankruptcy Rule 701(6) specifically requires procedurally that relief from stays must be sought in such manner rather than by motion. No specific language is required in the complaint so long as the adverse party is put on notice that a request for relief is sought on one of the grounds delineated under Code § 362(d). The landlord's complaint manifestly reveals that an alleged lack of adequate protection of its interest in the Valley Stream, New York property is the basis for its request. The complaint alleges that the lease in question was entered into between the parties at a monthly rental of $8350 and that the debtor has defaulted in the payment of the rents and has defaulted in the payment of the sum of $8350 ordered to be paid pursuant to this court's order dated September 14, 1981. The complaint also alleges as follows:

"4. That Defendant is hopelessly insolvent and is unable to make payments as required by the Order of this Court and the Bankruptcy Code and the financial situation of Defendant does not afford *adequate protection* for the interests of the Plaintiff and will suffer irreparable damage (sic) by permitting the Defendant to continue to occupy the premises unless the automatic stay of bankruptcy be terminated, annulled or modified so that the plaintiff-landlord may repossess the premises owned by it and no (sic) occupied by the Defendant." (Emphasis added)

The complaint sufficiently apprises the debtor that the landlord seeks relief from the automatic stay under Code § 362(d)(1) for cause, including the lack of adequate protection of its interest in the property in question. Accordingly, the debtor's motion to dismiss the complaint under Rule 12(b) of the Federal Rules of Civil Procedure, made applicable under Bankruptcy Rule 712, is denied.

The hearing to which the landlord is entitled under Code § 362(e) with respect to its request for relief from the stay shall be held on November 18, 1981 at 10:30 A.M. in the forenoon.

IT IS SO ORDERED.