In re Johanna A. STAMM and Victoria V.
Stamm, his wife, in their own right and
as parents and natural guardians of J.
Paul Stamm, Jeffrey R. Stamm and Jan-
ice L. Stamm, minors, Plaintiffs,

v.

RAPCO FOAM, INC., formerly Rappers-
will Corporation, Defendant,

v.

NORTHERN INSULATION SERVICE,
Additional Defendant.

Adv. No. 81–1531.

United States Bankruptcy Court,
W. D. Pennsylvania.

Feb. 26, 1982.

Edward D. Klym, Trushel, Wood & Israel,
Pittsburgh, Pa., for additional defendant.

William H. Vaughan, Jr., Grimball, Ca-
baniss, Vaughan & Robinson, Charleston,
S.C., Glenn C. McCarthy, Michael D. Heintz-
man, Thomson, Rhodes & Grigsby, Pitts-
burgh, Pa., for the defendant.

Jerome M. Libenson, Baskin & Sears,
Pittsburgh, Pa., for plaintiffs.

MEMORANDUM OPINION

JOSEPH L. COSETTI, Bankruptcy
Judge.

This matter comes before the Court on a
removal motion filed by the Debtor pursu-
ant to Section 1478 of the Bankruptcy Code
and Local Rule of Bankruptcy Procedure
7004.

The Plaintiffs in this action filed a Com-
plaint against the Defendants in the United
States District Court for the Western Dis-
trict of Pennsylvania on September 30,
1980. After several motions to dismiss
were denied, the Debtor filed its Answer to
the Complaint on February 26, 1980 by its
Pittsburgh Attorneys, Thomson, Rhodes
and Grigsby (hereinafter Thomson). The

Debtor at this time also filed a Motion for Third Party Complaint against Northern Insulation Service, Inc.

On August 10, 1981 the Debtor filed with the District Court a Notice that on July 28, 1981 Rapco Foam, Inc. had filed a Petition for Relief under Chapter 11 of the Bankruptcy Code and was constituted a Debtor in Possession. The Notice further notified all the parties of the automatic stay provisions of Section 362 of the Bankruptcy Code. This Notice was filed by Grimball, Cabaniss, Vaughan and Robinson, the Debtor's South Carolina attorneys (hereinafter Grimball).

At this point on August 11, 1981 in the District Court, the Plaintiffs filed an Answer to Motion for Stay. On September 2, 1981 Judge Cohill of the District Court issued a Memorandum Order requesting Briefs on the issue by September 22, 1981 and setting September 28, 1981 for oral argument.

On September 4, 1981, the Debtor by Grimball filed its Application for Removal in the United States Bankruptcy Court for the Western District of Pennsylvania seeking to remove the pending action from the District Court to the Bankruptcy Court. On September 4, 1981, a copy of the Application for Removal was filed with the District Court and the District Court closed its file on the case.

The Bankruptcy Court Clerk's office issued a Summons to all parties and docketed the Application for Removal as an Adversary Proceeding in this Court. The summons required a response by October 7, 1981, with a hearing set for October 21, 1981. The Plaintiffs, as well as the Debtor by Thomson, filed timely responses. The Plaintiff filed an Answer to Motion for Stay and a Brief to Remove Stay on September 21, 1981. The Debtor by Thomson filed a Brief with the Bankruptcy Court on September 21, 1981, which was originally filed in the District Court case which set forth objections to Plaintiffs' Answer to Motion for Stay filed in the District Court. On October 13, 1981, the Debtor by Thomson filed a Reply to Answer in the Bankruptcy Court, and on October 19, 1981 a Brief in Support. On October 20, 1981, the Debtor by Thomson filed a Motion to Dismiss seeking dismissal of Adversary No. 81–1531.

At the hearing on this matter on October 21, 1981, it became clear that the Plaintiffs were arguing for a relief from the automatic stay alleging that an insurance policy which covered the Debtor, and which was the real asset the Plaintiffs were attempting to reach, was not part of the Debtor's estate. The Debtor by Thomson sought to have this case dismissed alleging, *inter alia*, that this Court had no jurisdiction to lift the automatic stay since the bankruptcy case had been filed in South Carolina and that this Court could not hear a complaint to lift the stay entered by the South Carolina Court.

In a subsequent brief in support of the Motion to Dismiss, the Debtor by Thomson alleged that the removal application filed by the Debtor by Grimball was only a procedural first step in having the Adversary Proceeding moved to South Carolina. The Debtor further stated that the Adversary Proceeding filed by the Plaintiffs for Relief from Stay should be dismissed for the reasons stated above. For the record, it should be noted that no such adversary action was ever filed. This Adversary Proceeding was instituted by the Debtor by Grimball by the filing of the Application for Removal. In conclusion, the Debtor by Thomson seeks to have its own Adversary Proceeding dismissed.

On November 23, 1981, the Debtor by Grimball filed with this Court a Motion to Transfer Venue. The Memorandum of Law attached thereto states that in addition to the law suit in the District Court for the Western District of Pennsylvania, there are some eighty-five products liability actions pending against the Debtor in over thirty jurisdictions. The Motion seeks to have this action, once removed from the District Court, transferred to the Bankruptcy Court for the District of South Carolina. The Motion is supported by an Order, signed by Judge Davis, the Bankruptcy Judge for the

District of South Carolina, allowing the Debtor to transfer all the products liability cases to South Carolina. The Order, of course, does not order this Court to comply but rather approves this course of action for ease of administration and for economic reasons.

DISCUSSION

The Plaintiffs in this action raise a question as to whether the insurance policy is part of the Debtor's estate. The Court does not have to reach the merits of this issue because we have determined that this Court is not the proper forum to hear this proceeding.

Before, however, resolving the relevant procedural issues, this Court feels it should make a short observation. Because bankruptcy court decisions are not in agreement as to the law, the Debtor may have been misled and has acted in a contradictory fashion. The Debtor by one attorney is opposing what the Debtor by another attorney is requesting.

A resolution of several of the issues before this Court will help resolve these matters. These are: (1) Was the Application for Removal timely filed? (2) Does this Court have jurisdiction to grant relief from stay in this case? (3) Even if this Court has such jurisdiction, is this the proper venue to hear a Motion for Relief from Stay in this case? (4) Should this Court transfer the case to the United States Bankruptcy Court for the District of South Carolina?

1. Was the Application for Removal Timely Filed?

The Bankruptcy Reform Act of 1978, Pub.L. 95–595, U.S.Code Cong. & Admin. News 1978, p. 5787, amended 28 U.S.C. by adding a new Chapter 90 relating to the jurisdiction of Bankruptcy Courts. 28 U.S.C. § 1478 deals with removal of actions to the Bankruptcy Courts:

(a) A party may remove any claim or cause of action in a civil action, other than a proceeding before the United States Tax Court or a civil action by a government unit to enforce such governmental unit's police or regulatory power, to the bankruptcy court for the district where such civil action is pending, if the bankruptcy courts have jurisdiction over such claim or cause of action.

(b) The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground and an order under this subsection remanding a claim or cause of action, or a decision not so remanding, is not reviewable by appeal or otherwise.

Interim Bankruptcy Rule 7004 which has been adopted as a Local Rule in this jurisdiction dictates the process to be followed in bringing about such a removal. The note by the Advisory Committee on Bankruptcy Rules explaining Interim Rule 7004 states:

Section 1478 of Title 28 authorizes the removal from a state court or a federal court, other than the United States Tax Court, to the bankruptcy court of any civil proceeding, other than a suit by a government unit to enforce its police or regulatory power. This rule specifies the procedure for and after removal.

The subdivisions of this rule conform substantially to the sections of the Judicial Code pertaining to removal to the district courts; 28 U.S.C. §§ 1446–1451, and Rule 81(c) of the Federal Rules of Civil Procedure. Appropriate changes have been made to adapt the language of these sections and the rule to removal to the bankruptcy courts.

Subdivisions (a)(2) and (a)(3) are derived from paragraphs one and two of 28 U.S.C. § 1446(b). Timely exercise of the right to remove is as important in the bankruptcy context as it is when the removal is from a state court to a district court. If an action is within the bankruptcy court's jurisdiction when filed, only a defendant may remove. For example, if a trustee elects to sue in the district court or the state court, he has made an election to proceed in that forum and removal is inappropriate.

Both a plaintiff and defendant may remove an action which becomes removable after it is initiated. For example, if a corporation is a plaintiff in an action and

that corporation later becomes a debtor under chapters 7 or 11 of the code, either the trustee or the debtor in possession may remove or the defendant may remove. The thirty day period for the filing of the removal petition runs from the order for relief in the case. In voluntary cases this date is the date of the petition, but in involuntary cases the date is when the order for relief is entered under § 303(h) of the Code.

■■■■ There are two cases which have reached opposite conclusions with regard to whether the 30-day requirement of Interim Rule 7004(a)(3) was mandatory. *In re McCallum*, 7 B.R. 76 (Bkrtcy.C.D.Cal.1980) has decided that it is mandatory while *Matter of Circle Litho, Inc.*, 12 B.R. 752, 4 CBC 2d 1204 (Bkrtcy.D.Conn.1981) has decided that it is not. The Court in *Matter of Circle Litho, Inc.* stated:

> I cannot agree with the reasoning employed in *In re McCallum*. In the first place, the 30-day limitation on removal contained in Rule 7004 is not based on a statute enacted by Congress, but is contained in a local rule only. As is well known, the Bankruptcy Code enacted by Congress had its inception in a proposed new bankruptcy law submitted by the Commission on the Bankruptcy Laws of the United States in 1973. The Commission's proposed law contained a removal provision specifically providing for a 30-day time limit for removal of actions for any state or federal court to the bankruptcy court after the filing of a bankruptcy petition. Congress, however, removed the time limitation and other removal procedures from the Bankruptcy Code enacted in 1978. Congress had decided to leave these matters to be determined by the bankruptcy rules or local rules. See Kennedy, *The Bankruptcy Court Under the New Bankruptcy Law: Its Structure, Jurisdiction, Venue and Procedure*, 11 St. Mary's L.J. 285 (1979); House Report No. 95–595, 95th Cong., 1st Sess. (1977) Appendix I, (309) at 307. It is therefore a local bankruptcy rule which sets 30 days as the time limit for removal. All time limitations in the rules are sub-

> ject to Bankruptcy Rule 906 which generally permits time limits set by the rules to be enlarged or reduced. Such enlargement or reduction is not permitted where the time limit is contained in a statute. Further according to 14 Wright, Miller and Cooper, *Federal Practice and Procedure, Jurisdiction* § 3721, at p. 515, in discussing § 1446, the "right of removal probably was designed to protect non-residents from the local prejudices of state courts." This is a purpose completely foreign to § 1478, which allows the removal from both state and district courts. The removal provisions of the Bankruptcy Code are a complement to the sweeping grant of original jurisdiction to the bankruptcy courts for the purpose of permitting a bankruptcy court to determine all actions which are related to bankruptcy cases. Thus, I conclude that the cases construing the time limitations in § 1446(b) are not precedential, and the time in Rule 7004(a)(3) is subject to enlargement in the discretion of the Court. *Matter of Circle Litho, Inc.*, supra, 12 B.R. at 755–54, 4 CBC 2d at 1208.

We agree with this reasoning and especially that the principal purpose of Rule 7004 was to complement the sweeping grant of original jurisdiction to the Bankruptcy Courts so that all related matters may be consistently considered. Therefore, we determine that this Court may enlarge the 30-day time limit in appropriate circumstances. However, we do not agree that Bankruptcy Rule 906 controls for the reason that that rule specifically refers to enlarging time periods called for in the Bankruptcy Rules upon application. In this case the Application for Removal was filed in this Court within 45 days of the date of filing of the Petition. Since no party to these proceedings was prejudiced by this short delay, we find that the Application for Removal was timely filed.

2. Does this Court have jurisdiction to grant relief from stay in this case?

The Bankruptcy Courts are granted jurisdiction through the District Courts. Section 1471 of Title 28 of the United States Code states:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

(c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.

(d) Subsection (b) or (c) of this does not prevent a district courts (sic) or a bankruptcy court, in the interest of justice, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11. Such abstention, or a decision not to abstain, is not reviewable by appeal or otherwise.

(e) The bankruptcy court in which a case under title 11 is commenced shall have exclusive jurisdiction of all the property, wherever located, of the debtor, as of the commencement of such case.

Section 1471 contains a comprehensive scheme for dealing with the jurisdiction of the Bankruptcy Courts. In the first place the grant of jurisdiction over bankruptcy matters is given to the District Courts and then passed through to the Bankruptcy Courts. The purpose of this scheme was to avoid constitutional questions regarding the expanded jurisdiction to the non-tenured Bankruptcy Courts.

The House-Senate compromise was to follow the Senate approach regarding the term of office of judges to the bankruptcy court, rather than the House approach calling for life tenure, and thus the problems of the court's constitutionality became crucial. In an attempt to forestall constitutional attack, therefore, the bankruptcy courts were created as adjuncts to the district courts, and correspondingly, bankruptcy jurisdiction was vested by 28 U.S.C. § 1471(a) and (b) initially in the district courts. 1 *Collier on Bankruptcy*, 3–37 (15th Edition 1981).

This scheme, however, has not been free from constitutional attack. See Judge Lord's Opinion in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, 12 B.R. 946 (D.C.D.Minn.1981).

Section 1471 also makes a distinction between "cases" and "proceedings". Case refers to the bankruptcy itself, while a proceeding is a matter that is ancillary to the case. The words "case" and "proceeding" have become words of art in the Bankruptcy Code.

Section 1471 of Title 28 distinguishes between "cases under Title 11" and "civil proceedings arising under Title 11." The district courts and the bankruptcy courts as their adjuncts, have exclusive jurisdiction of the former and "original but not exclusive" jurisdiction of the latter. Neither the word "case" nor "civil proceeding" is defined in the new legislation, but the meaning of "case" is indicated by sections 301, 302, 303, and 304 of Title 11. These sections make it clear that a case is commenced by the filing with the bankruptcy court of a petition under one of the chapters of Title 11. This usage is consistent with that adopted in the Rules of Bankruptcy Procedure. The grant of "original and exclusive jurisdiction of all cases under Title 11" is intended to continue the exclusiveness of the grant heretofore conferred on district courts and bankruptcy courts as their adjuncts under 28 U.S.C. § 1334. This exclusiveness has extended to all such matters and proceedings as the following: determination of issues arising on a petition and pleadings and motions directed thereto, the appointment of a trustee and other functionaries to perform duties of administration; the conduct of meetings of creditors; the allowance and disallowance of claims; the allowance and disallowance of exemptions; the distribution of proceeds of estates; the granting of denial of discharge; the confirmation of plans;

the conduct of sales of property of the estate; the allowance of fees and expenses payable out of estates; and the closing and reopening of cases. These matters and proceedings have been governed by the rules in Parts I, II, III, and IV of the Rules of Bankruptcy Procedure and Rule 606 of the Rules of Bankruptcy Procedure.

Civil proceedings arising under Title 11 or arising in or related to cases under Title 11 include both adversary proceedings that would have fallen within the summary jurisdiction of the bankruptcy court under the Bankruptcy Act and controversies that could have been determined only in plenary proceedings in state or federal district courts under the Bankruptcy Act. This grant of jurisdiction thus eliminates the distinction between summary and plenary proceedings and accomplishes one of the most important reforms that had been recommended by the Commission on Bankruptcy Laws. Kennedy, *The Bankruptcy Court Under the New Bankruptcy Law: Its Structure, Jurisdiction, Venue, and Procedure*, 11 St. Mary's L.J., 265, 274–5 (1979).

This distinction between case and proceeding is made clear by the legislative history of the Bankruptcy Reform Act. See House Report No. 95–595, 95th Cong., 1st Sess. (1977) 445, Senate Report No. 95–989, 95th Cong., 2nd Sess. (1978) 153–4, U.S.Code Cong. & Admin.News 1978, p. 5787.

Unfortunately the few reported cases discussing the extent of Bankruptcy Court Jurisdiction have reached different conclusions with regard to the consequences of the jurisdictional grant. The first reported case that dealt with jurisdiction at any length was *In re Coleman American Companies, Inc.*, 6 B.R. 251 (Bkrtcy.D.Col.1980). The Court in *Coleman* was confronted with a Colorado creditor of a Kansas Debtor attempting to lift the automatic stay provisions of Section 362 of the Bankruptcy Code. The Debtor filed a Motion to Dismiss claiming the Colorado Court did not have jurisdiction to lift the stay since the Bankruptcy Petition had been filed in U. S. Bankruptcy Court for the District of Kansas. Judge Clark found that Section 1471(b) and (c) gave broad jurisdiction to the Bankruptcy Courts to hear all proceedings in any case no matter where that case is filed. The Debtor argued that Section 1471(e) which gives exclusive jurisdiction over the Debtor's property to the court where the case is filed, prohibited the Colorado Court from acting to lift the stay in this case. The Colorado Court thought otherwise. More importantly, the Colorado Court found that it could not accept a literal reading of Section 1471(c), which gives all jurisdiction conferred on the District Court in Section 1471(b) to the Bankruptcy Court in the district where the case is commenced.

> The extreme debilitating effect that a literal reading of Section 1471(c) would have on these venue provisions is untenable. This is not to say that there are not situations where venue statutes are inapplicable due to the lack of jurisdiction of a court. However, these new venue provisions relating to bankruptcy proceedings would almost never have any applicability if the debtor's contention were valid. A statute should not be interpreted so as to render one part inoperative.... It was not the intent of Congress to grant jurisdiction over all bankruptcy matters to only the bankruptcy court for the district in which a case under Title 11 commenced. 1 *Collier on Bankruptcy*, 15th Ed., ¶ 3.01[I][e]. Section 1471(c) does not preclude this court from exercising jurisdiction over the plaintiff's complaint for relief from stay. *In re Coleman American Companies, Inc.,* supra, at 254.

The Court, therefore, denied the Debtor's Motion to Dismiss, but also noted that the issue of proper venue had not been raised and so that issue was not decided.

Following their failure to get the Complaint to Lift the Stay referred to above dismissed in the Colorado proceeding, the Debtor brought a contempt action against the Colorado creditor in the United States Bankruptcy Court for the District of Kansas where the Bankruptcy had originally

been filed. The Kansas Bankruptcy Court found the Colorado creditor in contempt of Court for violating the automatic stay by petitioning for relief from stay in the Colorado bankruptcy court. *In re Coleman American Companies, Inc.*, 8 B.R. 384 (Bkrtcy.D.Kansas).

Judge Pusateri held that:

Upon the filing of the Chapter 11 petition the Bankruptcy Court for the District of Kansas obtained exclusive jurisdiction of the debtor's property as provided by § 1471(e) and LAB (the Colorado creditor) was stayed from proceeding against the debtor's property or the debtor. See *Duggan v. Sansberry*, 327 U.S. 499, 66 S.Ct. 657 [90 L.Ed. 809] (1946). The stay imposed by the Kansas filing is similar to an injunction and courts of equal rank may not vacate one another's stay or injunction. See *In re Westec Corp.*, 460 F.2d 1139 (5th Cir. 1972); *In re Delta Food Processing Corp.*, 446 F.2d 437 (5th Cir. 1971). One of the purposes of bankruptcy is to afford debtors the ability to bring order to their affairs. As stated in *Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47 (2nd Cir. 1976), cert. denied 429 U.S. 1093, 97 S.Ct. 1107 [51 L.Ed.2d 540] at 550 F.2d 55, 57, *the need to centralize bankruptcy-related proceedings and prevent a chaotic scramble for the debtor's assets is an interest of paramount importance in the bankruptcy laws. The automatic stay of Rule 11–44 is designed to prevent a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts. The stay insures that the debtors affairs will be centralized, initially, in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all the creditors interests with one another.* This statement is repeated in varying forms in numerous cases. Cf. *Bohack Corp. v. Borden, Inc.*, 559 F.2d 1160 (2nd Cir. 1979). Though these cases were decided prior to the Bankruptcy Reform Act of 1978, they are no less applicable now. The clear intent of the Code is the same. If it were otherwise, a debtor, be

he in Chapter 7, 11 or 13, rather than have his litigation centralized would be amenable to suit throughout the United States, its territories and possessions. Precious energy and resources would be expended by those debtors who could afford travel and other expenses related to litigating in multiple jurisdictions. For those who could not afford the travel and expense, default would await. *Id.*, at 389.

The Kansas Court makes a strong case for a single bankruptcy court to exercise original jurisdiction in a bankruptcy case. This single court would be the court where the Debtor's Petition is originally filed. This analysis is based on the injunctive nature of the automatic stay, Section 1471(e), and the ease of bankruptcy administration. We agree with Judge Pusateri's conclusion on these issues. However, they need not be in conflict with Judge Clark's if the Court of original jurisdiction lifts the automatic stay so that the parties could proceed in another court.

In a more recent case before the Bankruptcy Court for the Southern District of Florida, the Court specifically rejected Judge Clark's analysis in a similar fact situation. In *In re Zaleta*, 13 B.R. 144 (Bkrtcy. S.D.Fla.1981) the Debtors had filed their Bankruptcy Petition in the Bankruptcy Court for the Western District of Pennsylvania. A Florida mortgagee of Florida real estate owned by the Debtors attempted to have the automatic stay lifted in the Florida Bankruptcy Court. The Court specifically disapproved Judge Clark's finding but decided the case on the issue of venue and thus the Court found it unnecessary to reach the problem of jurisdiction. The Court found that the complaint was a "proceeding" under 28 U.S.C. § 1473 and that this venue section directed that the complaint be sent to the Bankruptcy Court for the Western District of Pennsylvania.

One recent case, however, has dealt squarely with the issues raised by Judge Clark. In *In re Burley*, 11 B.R. 369 (Bkrtcy. C.D.Cal.1981) the California Bankruptcy

Court was faced with a complaint objecting to the Debtor's discharge which had been filed in the Bankruptcy Court for the District of Colorado. Before the complaint objecting to discharge could be heard in Colorado, the Debtors received their discharge from the California Court. The case came before the California Court on a motion by the objectors requesting that the discharge be set aside.

Judge Orden in *Burley* first analyzes Section 1471 in light of the historical development of the jurisdiction of the Bankruptcy Court and concludes that the section is not a strictly jurisdictional section but that it carries a heavy infusion of venue language.

The provisions of the Act [The Bankruptcy Act] were construed together to read the language of § 2(a)(1) to include *both* a grant of jurisdiction *and* a definition of the proper venue in which that jurisdiction should be exercised. § 1471(c) and the venue provisions of the Reform Act suggest a similar analysis and construction. Like its predecessor, the language of § 1471(c) includes *both* a grant of jurisdiction *and* a definition of proper venue. The language "for the district in which a case under title 11 is commenced" focuses on the particular bankruptcy court which will exercise the jurisdiction vested in the Bankruptcy Court under § 1471(c). The phrase neither enlarges nor diminishes the jurisdiction conferred on the new bankruptcy court; it merely directs traffic to the proper court. The conclusions of *Martinez,* [*In re Martinez,* 241 F.2d 345, 349 (10th Cir. 1957)], *Eatherton,* [*In re Eatherton,* 271 F.2d 199 (8th Cir. 1959)], and *Bass,* [*Bass v. Hutchins,* 417 F.2d 692 (5th Cir. 1969)], which demonstrate that the liberal and flexible venue provisions of § 32 are inconsistent and incompatible with a strictly jurisdictional view of § 2(a)(1) apply with equal force and reason to the interaction and relationship between § 1471(c) and the venue provisions contained in § 1473, § 1475 and § 1477(a). The provisions in § 1475 and § 1477(a) for transfer of venue, and retention of the case in a court of improper venue, are incomprehensible if the

bankruptcy court "for the district in which a case under title 11 is commenced" is the only bankruptcy court with the jurisdiction denied from § 1471(a) and (b). A court must have jurisdiction or it cannot entertain a case *at all*; a court which can entertain a case or proceeding must, by definition, be a court with jurisdiction. *In re Burley,* supra, at 378–8, [Bracketed material added].

According to Colliers, while the intention of Section 1471(c) is clear, the drafting is inartful. 1 *Collier on Bankruptcy,* 3–45 (15th Ed. 1981). That the intention of the jurisdictional scheme for the new bankruptcy courts was to extend to all the bankruptcy courts not just the court where the petition was filed is made clear in both the Senate and House Reports.

The jurisdiction granted is of all proceedings arising under or related to a case under Title 11. The bill uses the term "proceeding" instead of the current "matters and proceedings" found in the Bankruptcy Act and Rules . . . .

The use of the term proceeding, . . . is not intended to confine the bankruptcy case . . . .

The phrase "arising under" has a well defined and broad meaning in the jurisdictional context. By a grant of jurisdiction over all proceedings arising under title 11, the bankruptcy courts will be able to hear any matter under which a claim is made under a provision of title 11 . . . . In sum, the combination of the three bases for jurisdiction, "arising under title 11", "arising under a case under title 11", and "related to a case under title 11", will leave no doubt as to the scope of the bankruptcy court's jurisdiction over disputes. House Report No. 95–595, 95th Cong., 1st Sess., 445–6 (1977), U.S.Code Cong. & Admin.News 1978, 6400, 6401.

The Senate Report states:

The jurisdiction to be exercised by the bankruptcy courts is of all proceedings arising under title 11 or arising under or related to a case under title 11 . . . .

The combination of the three bases for jurisdiction, "arising under title 11", "arising under a case under title 11", and "related to case under title 11", will leave as to the scope of the jurisdiction over disputes to be exercised by the bankruptcy court. Senate Report No. 95–989, 95th Cong., 2nd Sess., 153–4 (1978), U.S.Code Cong. & Admin.News, 1978, 5939, 5940.

■ This analysis, rather than the one adopted by Judge Clark, forestalls questions regarding statutory interpretation that were raised in *In re Zaleta*, supra. In conclusion, we decide that this Court does have jurisdiction to hear the Answer to Stay filed by the Plaintiffs in this case. Next we turn to the question of proper venue.

3. Is this Court the proper venue to entertain the questions raised in this proceeding?

The first task before deciding which section of Title 28 determines venue is to decide whether the action before the Court is a "case" or a "proceeding". Pending before the Court are a Petition for Removal, an Answer to Motion for Stay, and a Motion to Dismiss. All of these matters are proceedings, as that term is used in Title 28. We look again to the legislative history.

The bill uses the term "proceeding" instead of the current "matters and proceedings" found in the Bankruptcy Act and Rules. The change is intended to conform the terminology of title 28, under which anything that occurs within a case is a proceeding. Thus, proceeding here is used in its broadest sense, and would encompass what are now called contested matters, adversary proceedings, and plenary actions under the bankruptcy law. It also includes any disputes related to administrative matters in a bankruptcy case. House Report No. 95–595, 95th Cong., First Sess., 445 (1977), U.S.Code Cong. & Admin.News 1978, 6400, 6401, [Underlining added].

To the same effect see Senate Report No. 95–598, 95th Cong., Second Sess., 153–4 (1978). Thus it appears that a "proceeding" includes everything related to a "case" and the "case" includes the actual administra-

tion of bankruptcy from the time of its filing until the case is finally closed.

The two sections of Title 28 dealing with proper venue for a proceeding under the Bankruptcy Code are Sections 1473 and 1475. Section 1473 states:

(a) Except as provided in subsections (b) and (d) of this section, a proceeding arising in or related to a case under title 11 may be commenced in the bankruptcy court in which such case is pending.

The other paragraphs of Section 1473 deal with exceptions to this general rule. This general rule provides that venue of a proceeding may be in the court where the bankruptcy case was commenced. The *Burley* court refers to this court as the "home" court and we will do the same for ease of description.

It is important to note here that while proper venue of a proceeding may be in the home court, that is not the only proper venue. Section 1475 deals with change of venue. This section states:

A bankruptcy court may transfer a case under title 11 or a proceeding arising under or related to such a case to a bankruptcy court for another district in the interest of justice and for the convenience of the parties.

The idea of giving the individual bankruptcy courts discretion in transfering or retaining cases and proceedings is carried forward in Section 1477(a):

(a) The bankruptcy court of a district in which is filed a case or proceeding laying venue in the wrong division or district may, in the interest of justice or for the convenience of the parties, retain such case or proceeding, or may transfer, under section 1475 of this title, such case or proceeding to any other district or division.

■ These broad discretionary rules for retention and transfer appear to carry out the expansive jurisdiction of the bankruptcy court discussed above. Thus, while transfer and retention may be discretionary, the intent of the code was to fix the home court as the proper venue for bring-

ing the initial proceeding. The *Burley* Court said:

> The drafters of the Reform Act thereby designed a system for processing administrative matters and "proceedings" which may be summarized as follows:
>
> (i) Administrative matters which are nonadversary will be processed in the "home" court without reference to rules of venue;
>
> (ii) Disputes arising with respect to administrative matters will be commenced pursuant to § 1473(a), in the "home" court;
>
> (iii) Proceedings described in § 1473(b) through (e) will be commenced in the bankruptcy court determined in accordance with the provisions of (b) through (e); and
>
> (iv) All other "proceedings" (i.e. "contested matters", "adversary proceedings" and "plenary actions") will be commenced in the bankruptcy court in which the "case" is pending pursuant to the "venue phrase" [the district in which the case under title 11 is commenced] of § 1471(c) and § 1473(a). *In re Burley*, supra, at 385.

The Court agrees with this analysis. Without such a scheme, bankruptcy courts in one district would interfere with the orderly administration of a case filed in another district. In the instant case it would not be appropriate for this Court to lift the automatic stay of an equal court in South Carolina and allow the Plaintiffs to proceed to suit against the Debtor. This would destroy any attempts by the Bankruptcy Court for the District of South Carolina to consistently administer the Debtor's bankruptcy case which was originally filed in that district.

We would point out that the initial consolidation of the numerous adversary cases involving the Debtor in the "home" bankruptcy court is similar to the scheme contemplated for Multi-District Litigation found at Section 1407 of Title 28, which provides for the consolidation of cases for the purpose of pre-trial proceedings from multiple districts involving the common questions of fact. The purpose of this procedure, of course, is to ease the administration and to prevent inconsistent results in these multi-district cases.

In this case, there appears to be only one $1,000,000.00 insurance policy to satisfy all the claims, and it makes sense to allow one court to control the claims of cases related to that asset rather than to allow the first Plaintiff to obtain a judgment to satisfy its claims. The insurance policy appears to be the only resource available to satisfy these proven claims. In this regard Section 1471(e) of Title 28 states:

> (e) the bankruptcy court in which a case under title 11 is commenced shall have exclusive jurisdiction of all the property, wherever located, of the debtor, as of the commencement of such case.

4. Should this Court remove this proceeding to the Bankruptcy Court for the District of South Carolina?

Removal is governed by Section 1478 of Title 28. That section states:

> (a) A party may remove any claim or cause of action in a civil action, other than a proceeding before the United States Tax Court or a civil action by a government unit to enforce such governmental unit's police or regulatory power, to the bankruptcy court for the district where such civil action is pending, if the bankruptcy courts have such jurisdiction over such claim or cause of action.

The mechanics of Section 1478(a) are such that removal may only be to the bankruptcy court for the district in which the civil action is pending. In this case the only removal allowed is to this Court. Collier states:

> However once removal is effected, the general change of venue provisions of 28 U.S.C. §§ 1475, 1477 would apply and that venue may be changed if the criteria of that section may be met. 1 *Collier on Bankruptcy*, 3–73, 74 (15th Ed. 1981).

This strikes the Court as consistent with our analysis regarding jurisdiction and venue set forth above. The local bankruptcy court is the most convenient court to re-

ceive removal petitions and acts as the first court to review them. If it is also the "home" court, it will decide whether to hear the matter or remand it to the district court pursuant to Section 1478(b). If the local bankruptcy court is not the "home" court, it should transfer the case to the "home" court.

In this case, this Court grants the Petition for Removal of this civil action to this Court and also transfer the case to the Bankruptcy Court for the District of South Carolina.